**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TOMAHAWK MANUFACTURING, INC., and FORMTEC, LLC,

           Plaintiffs,

v.

SPHERICAL INDUSTRIES, INC., et al.,

           Defendants.

Case No.: 2:23-cv-01007-APG-NJK

**Order Granting in Part the Plaintiffs' Motions for Summary Judgment and Dismissal**

**[ECF Nos. 410, 411, 415, 417]**

Plaintiffs Tomahawk Manufacturing, Inc. and Formtec, LLC sue defendants Spherical Industries, Inc.; Spherical Industries Holdings LLC; Christopher Duggan; Will Hardy; Entourage International, Inc.; and Blockxchange, Inc. for a variety of claims. The defendants have counterclaimed. In this order, I address the plaintiffs' motions for summary judgment on their conversion claim, all of the defendants' counterclaims, and some of the defendants' affirmative defenses. The defendants oppose and object to some of the plaintiffs' evidence. In reply, the plaintiffs argue that I should not consider the defendants' response because it was untimely and does not include a concise statement setting forth each material fact with citations to the record.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motion. I grant the plaintiffs' motions in part.

**I.  LEGAL STANDARD**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law."

1 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence
2 is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

3     The party seeking summary judgment bears the initial burden of informing the court of
4 the basis for its motion and identifying those portions of the record that demonstrate the absence
5 of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the
6 moving party also bears the burden of persuasion at trial, to prevail "on summary judgment it
7 must show that the evidence is so powerful that no reasonable jury would be free to disbelieve
8 it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (quotation omitted).  If the moving
9 party satisfies its initial burden, then the burden shifts to the non-moving party to set forth
10 specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe*
11 *N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving
12 party must produce evidence of a genuine dispute of material fact that could satisfy its burden at
13 trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-
14 moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

15 **II.  PROCEDURAL ISSUES**

16     In reply, the plaintiffs argue that I should not consider the defendants' opposition because
17 the defendants filed it four days late without seeking an extension of time and because it does not
18 include a concise statement of disputed facts with citation to the record as required by Local Rule
19 56-1.  Because these issues were raised in the reply brief and defendants did not move for leave
20 to respond, the defendants have not addressed these arguments.

21     The defendants' response was untimely, without an explanation or a motion to extend
22 time.  Additionally, it does not comply with Local Rule 56-1.  While I understand the plaintiffs'
23 frustration with the defendants' repeated inability to follow the rules, the plaintiffs have shown

no prejudice from the four-day delay.  And the defendants' failure to follow Local Rule 56-1

may result in a finding that they have not pointed to evidence supporting a genuine issue of

material fact for trial.  In the interests of resolving this case on the merits, I will consider the

defendants' late-filed opposition brief.

And although the plaintiffs do not point it out, the defendants have again evaded the

summary judgment page limit by filing objections to the plaintiffs' evidence in a separate

document. *See* ECF No. 439.  Consequently, I will not consider the separately filed objections.

## III.  PLAINTIFFS' CONVERSION CLAIM

Count five of the plaintiffs' amended complaint alleges the defendants converted the

plaintiffs' trade secrets and confidential information by misappropriating them, using them to

compete against the plaintiffs, and using them to recruit investors by misrepresenting that the

defendants own the plaintiffs' patents, trade secrets, and confidential information. ECF No. 310

at 42-43.  Although the amended complaint asserts this claim against all defendants, the plaintiffs

move for summary judgment against only defendants Spherical Industries, Inc. (SII), Christopher

Duggan, and Will Hardy based on six categories of property.  The defendants respond by

denying they converted or misappropriated anything.  They also object to the evidence and

findings from the arbitration proceedings between Formtec and non-party Spherical IP, LLC

because the defendants were not parties to those proceedings.

Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over

another's personal property in denial of, or inconsistent with[,] his title or rights therein or in

derogation, exclusion, or defiance of such title or rights." *Blige v. Terry*, 540 P.3d 421, 431 (Nev.

2023) (en banc) (quotation omitted).  "Conversion does not require a manual or physical taking

of property," and both tangible and intangible property can be converted. *Id.*  "The effect of the

act is critical to conversion, not the converter's intent, and thus conversion is sufficiently shown when an owner is deprived of their property by the wrongful act of another who assumes dominion over the property." *Id.* But for an act to amount to conversion, it "must be essentially tortious," meaning it was "an unlawful act, or an act which cannot be justified or excused in law." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958) (quotation omitted). Further, "conversion generally is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value." *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006). Whether a defendant converted a plaintiff's property is generally a question of fact for the jury. *M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 543 (Nev. 2008).

### A. Tomahawk Presentation Materials and a Trade Secret Inventory

The plaintiffs contend that SII, Duggan, and Hardy converted "Tomahawk presentation materials" and a "trade secret inventory prepared by" non-party James Wolff. ECF No. 411 at 17. The defendants do not specifically respond to this argument, but generally deny having converted or misappropriated any of the plaintiffs' property.

The plaintiffs have presented evidence that in January 2023, non-party Robert Block[1] sent an email to Duggan, Hardy, and non-parties Wolff and Jim Motter with the rather long title: "First draft. If this broadly works for content, I will insert subsections and subheadings for purposes of organization and send by noon CST tomorrow. Maybe a grand total range is called for as well." ECF No. 411-10 at 2-3. The substantive part of the email was addressed to "Patrick," whom Wolff described as an attorney "who was interested in buying into this package

---

[1] According to Hardy, Block "occasionally did contract work" for Spherical Industries to "help draft legal documents and help interface with legal representation." ECF No. 411-13 at 72.

of patents, designs." *Id.*; ECF No. 411-16 at 46.  The body of the email stated that attached were "(a) Tomahawk presentation materials that provide a more detailed explanation of the SoftChoice technologies; (b) [a] trade secret inventory prepared by Jim Wolff," and (3) a Wolff-prepared summary of a patent "that offers some parameters on the revenues that could be attached to that patent." ECF No. 411-10 at 3.

The email then discussed financial information about Tomahawk's sales that were "obtained from a senior inside source at Tomahawk." *Id.*  The email represented that "we have an extraordinarily valuable IP portfolio, generating enormous revenue in the marketplace . . . ." *Id.* at 4.  The email ended by stating the "purpose of this communication and the attached materials is simply to show you that we stand an excellent chance of reaching a scale and level of return that will interest your bankers.  I respectfully suggest that the case will be professionally rewarding for your team and your firm as well." *Id.* at 5.  Motter responded, in part, that he was "[g]lad to see JW[2] being a strong value-add." ECF No. 411-11 at 2.

Hardy testified that he did not know how Block obtained Tomahawk presentation materials or what Block was referring to in the email. ECF No. 411-13 at 70.  Wolff testified that he did not remember if he gave the Tomahawk presentation materials to Block. ECF No. 411-16 at 47.  Wolff denied he prepared the trade secret inventory attached to the email or that he provided information about the plaintiffs' profit margin. *Id.* at 47-48.  Motter testified that he did not know how Spherical obtained Tomahawk presentation materials. ECF No. 411-19 at 32.  The defendants attach to their opposition brief affidavits from Duggan, Hardy, and Wolff denying that Wolff disclosed the plaintiffs' trade secrets to the defendants through improper means with the intent to capitalize on the plaintiffs' work in developing the technology. ECF Nos. 436-1;

---

[2] Motter testified that JW referred to James Wolff. ECF No. 411-19 at 37.

436-2; 436-3.  Those affidavits are general denials directed only at the amended complaint's allegations about trade secrets, not confidential information or specific items of property like the presentation materials.

The plaintiffs have not pointed to evidence that shows what the Tomahawk presentation materials and trade secret inventory attached to this email are.  I understand from the plaintiffs' motion for sanctions that they do not know because the defendants never produced the email attachments in discovery. *See* ECF No. 400 at 15-16, 20.  Regardless, a reasonable jury could find from the title alone that the presentation materials belong to Tomahawk.  A reasonable jury could also find that the defendants engaged in a distinct act of dominion over the presentation materials in derogation of Tomahawk's rights by using them to prepare a pitch to a potential investor for the defendants' benefit, not Tomahawk's benefit.

However, the plaintiffs present no evidence that the materials were ever sent to Patrick or any other investor.  Thus, genuine disputes remain regarding whether the defendants' conduct amounts to a sufficiently severe and important interference with Tomahawk's right to control its property with respect to the presentation materials.  The plaintiffs do not point to evidence that they were damaged as a result of these individuals sharing the presentation materials amongst themselves.  They cite no authority and conduct no analysis regarding whether the defendants sharing the presentation materials amongst themselves and related individuals in anticipation of soliciting an investor, but not actually doing so, is sufficient to amount to conversion.

The same analysis would apply to the trade secret inventory.  Moreover, it is unknown whether the trade secret inventory belongs to the plaintiffs.  The plaintiffs assume that it does,

but the email does not describe it as a list of Tomahawk or Formtec's trade secrets.[3]  Because the plaintiffs have not met their initial burden under Rule 56, I deny their motion for summary judgment on their conversion claim for the presentation materials and trade secret inventory.

### B.  Fast Food Chain Deal Information

The plaintiffs argue that SII, Duggan, and Hardy converted confidential information related to a potential business deal with a fast food chain.  The defendants argue that issues of fact remain regarding whether Formtec and Tomahawk's principal, Robert Tournour, granted Wolff permission to reveal information about the deal to Duggan so that Duggan could meet with investors to help salvage the deal.

In the same January 2023 email discussed above, Block wrote that for "patent 9,713,341 we can extrapolate a [certain] annual royalty based on [Fast Food Chain 1][4] sales alone.  And we know [Fast Food Chain 1] is not the only user."  ECF No. 411-10 at 3.  Hardy responded to Block's email in part by stating that the "[o]nly thing that jumps out is the reference to [Fast Food Chain 1].  It was [Hardy's] understanding that there was no concrete link in recent years and this would maybe be persued [sic] in discovery instead.  Should we maybe switch that name to [Fast Food Chains 2 and 3]?"  *Id.* at 2.  Block responded that he would "switch to [Fast Food Chains 2 and 3].  Jim gave [Block] the financial estimate based on [Fast Food Chain 1], but [the other two] together may not be [far] off."  *Id.*

---

[3] The plaintiffs note that Duggan testified that Spherical Industries has no intellectual property, so the trade secret inventory must be a list of the plaintiffs' trade secrets.  But I cannot make that assumption.  It is possible, for example, that the list identifies Wolff's or some other person or entity's trade secrets, although Wolff denied preparing the inventory.  Without the inventory, it is unknown what it reflects.  The plaintiffs did not ask me to draw an adverse inference against the defendants for their failure to produce the inventory in discovery.  Even if I did so, the same analysis would apply with respect to the presentation materials.

[4] To avoid having to seal this order, I will refer to the relevant fast food chains as Fast Food Chain 1, 2, and 3.

In their declarations attached to the defendants' opposition, the defendants do not specifically deny converting this information. ECF Nos. 436-1; 436-2; 436-3. At his deposition, Hardy denied having "information from Tomahawk or of Tomahawk's pertaining to anything about [Fast Food Chain 1]." ECF No. 411-13 at 71. Hardy also denied that he was trying to hide anything by suggesting they change the name from Fast Food Chain 1 to Fast Food Chains 2 and 3. *Id.*

At his deposition, Duggan testified that he learned about the deal with Fast Food Chain 1 from Wolff. ECF No. 411-14 at 29. Wolff testified that he was involved with negotiations between Tomahawk and Fast Food Chain 1 and he understood that the technology Formtec was offering Fast Food Chain 1 involved confidential information. ECF No. 411-16 at 13-14. But Wolff testified that Tournour permitted Wolff to speak to Duggan about the deal to obtain additional funding for Tournour to move forward with the deal with Fast Food Chain 1. *Id.* at 17-18.

Viewing the facts in the light most favorable to the defendants, genuine disputes remain regarding whether they converted information about the fast food chain deal. If the jury believes Wolff, then the defendants did not obtain the information improperly. Rather, Tournour gave Wolff the green light to share information to obtain additional funding. The plaintiffs contend that I should not believe this testimony and they point to circumstantial evidence that the defendants and Wolff were attempting to circumvent Tournour, not assist him in landing the deal. But credibility is for the jury to decide. *See Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005) (stating that credibility is "a determination that is exclusively within the province of the factfinder at trial, not the district court on summary judgment"). I

therefore deny the plaintiffs' motion for summary judgment on their conversion claim related to information about the fast food chain deal.

### C.  2012 Formtec Slide Deck

The plaintiffs assert that Spherical Industries, Duggan, and Hardy converted a 2012 Formtec slide deck by copying it and substituting Spherical Industries' name for Formtec's.  The defendants do not specifically respond to this argument, but generally deny having converted any of the plaintiffs' trade secrets.

The plaintiffs have presented evidence that in 2014, Duggan sent non-party Trey Stinnett a Spherical Industries pitch deck regarding water applications of sphere-into-cylinder technology. ECF No. 411-3.  That pitch deck is nearly identical to a 2012 Formtec pitch deck, except that the name Formtec is replaced by Spherical Industries save for two places where Formtec's name still appears. *Compare* ECF Nos. 56-3 and 167 at 36-55; *with* 411-3 (pages 9 and 17 containing Formtec's name).  Stinnett testified that he used the pitch deck Duggan sent him to make another version for Spherical Industries. ECF No. 411-18 at 23-25.

In a declaration Duggan and Wolff filed jointly in this litigation, Duggan averred that Tournour gave him the pitch deck in 2014 without requiring Duggan to sign a non-disclosure agreement. ECF No. 167 at 8, 15-16.  Duggan stated that the purpose was to "get investors interested in the existing ideas and to develop whatever newer application ideas for Wolff's technologies that Duggan thought would work to attract [investors] at the 30 [m]illion dollar level." *Id.* at 15-16.  Duggan states that he thereafter gave Tournour a copy of his "new more sophisticated pitch deck" (the one prepared by Stinnett) that contained Spherical Industries' name, but not Formtec or Tomahawk's. *Id.* at 16, 58-65.

1       I deny the plaintiffs' motion for summary judgment because if a jury believes Duggan,

2  then the defendants did not obtain or use the pitch deck improperly.  Rather, Tournour gave it to

3  Duggan for the purpose of having Duggan solicit investors.  The plaintiffs contend that I should

4  not believe Duggan, but credibility is a jury question.

5       **D.  List of Potential Infringers**

6       The plaintiffs argue that Spherical Industries, Duggan, and Hardy converted a

7  compilation of potential infringers of the plaintiffs' technology.  The defendants do not

8  specifically respond to this argument beyond generally denying that they misappropriated trade

9  secrets.

10      The plaintiffs have presented evidence that Wolff's daughter, Elisabeth Wolff,[5] prepared

11  a list of showerheads that potentially infringed on a patent. ECF No. 230-4 at 2.  Elisabeth Wolff

12  prepared the list for the plaintiffs' benefit while her father still worked for Tomahawk. *Id.*  Hardy

13  testified that he obtained the list from Duggan. ECF No. 411-13 at 69.  Duggan testified that he

14  received the list from Elisabeth Wolff. ECF No. ECF No. 411-14 at 56.  Duggan also testified

15  that he knew about the list from Wolff. *Id.*

16      Duggan sent the list to non-party Dess Prosper, whom Duggan identified as a real estate

17  investor. ECF Nos. 411-7; 411-14 at 57.  Duggan told Prosper that "these are the patents we are

18  in the process of acquiring.  Along with the actual patents, we will be entitled to pursue the

19  shower head and other known violations, as the technology was illegally exploited." ECF No.

20  411-7 at 2.  Duggan opined that "we will be entitled to substantial recovery" from various

21  retailers. *Id.*  He also stated that they had a letter of intent in place with the inventor "for the

22

23

---

[5] I refer to James Wolff as Wolff, and Elisabeth Wolff by her full name.

1  purchase of all of these patents and the associated rights to pursue any violations." *Id.*  The

2  plaintiffs do not point to evidence that Prosper invested with the defendants.

3  　　　No genuine dispute remains that the list of potential infringers was the plaintiffs'

4  property.  The plaintiffs have presented evidence that Elisabeth Wolff prepared the list for their

5  benefit and the defendants have pointed to no contrary evidence.  Additionally, no genuine

6  dispute remains that the defendants wrongfully exercised distinct acts of dominion over the

7  property by using it as part of a pitch to an investor to invest with the defendants.  The

8  defendants do not point to evidence that anyone at Tomahawk or Formtec approved Wolff

9  revealing the list's existence to the defendants or Elisabeth Wolff sending the list to Duggan.

10 Nor do they point to evidence that the defendants had the plaintiffs' permission to use the list to

11 solicit investors in the defendants' effort to buy Spherical IP's interests in the patents.

12 　　　However, the plaintiffs' motion does not address whether using the list in an unsuccessful

13 solicitation to a potential investor is a sufficiently severe and important interference with their

14 right to control their property.  The plaintiffs do not point to evidence that they were damaged as

15 a result of the defendants sending the list to Prosper.  They cite no authority and conduct no

16 analysis regarding whether the defendants sharing the list with a potential investor but not

17 receiving funds from that potential investor is sufficient to amount to conversion.  I therefore

18 deny this part of the plaintiffs' motion because they did not meet their initial burden under Rule

19 56.

20 **E.  Research**

21 　　　The plaintiffs argue that the defendants converted Formtec's research and development

22 efforts related to the ideal profile of a spray nozzle.  They contend that SII, Duggan, and Hardy

23 converted the plaintiffs' property by representing that they owned the disputed technology to

11

1  raise money.  The defendants do not specifically respond to this argument, but generally deny

2  having converted any of the plaintiffs' property through misappropriating trade secrets.  They

3  also contend that issues of fact remain regarding whether the plaintiffs own the trade secrets and

4  whether the FOT Agreement is void due to the plaintiffs' failure to pay royalties to Wolff under

5  that agreement.

6         I deny the plaintiffs' motion because, viewing the facts in the light most favorable to the

7  defendants, a reasonable jury could find the defendants did not misappropriate the plaintiffs'

8  research.  The defendants deny under oath that they did so, and Wolff and Gannon deny that they

9  provided that information to the defendants. *See, e.g.*, ECF Nos. 12-3 at 8-10; 436-1, 436-2, 436-

10  3; 411-13 at 21, 26, 30, 38; 411-14 at 7-8, 11-12; 411-16 at 34-35, 37-38; 411-17 at 14; 436-8 at

11  155-56.  While there is evidence that could lead a jury to disbelieve these denials, credibility is

12  an issue for the jury to resolve.

13  **IV.  DEFENDANTS' COUNTERCLAIMS**

14         **A.  Declaratory Relief (Count One)**

15         In count one of their counterclaims, the defendants[6] seek declarations about (1) the effect

16  the Wisconsin arbitration proceeding between Formtec and Spherical IP has on the defendants;

17  (2) who owns the disputed technology; (3) whether the disputed technology is known or

18  knowable and in the public domain; and (4) whether the plaintiffs' claims in this case are barred

19  as compulsory counterclaims that should have been brought in an Oregon case between Wolff

20  and Tomahawk. ECF No. 315 at 10-15.  The plaintiffs move for summary judgment on each of

21  these requested declarations.

22

23  _____

[6] For ease of reference, I will refer to the defendants/counterclaimants as defendants, and the
plaintiffs/counter-defendants as plaintiffs.

### 1. Arbitration

The plaintiffs argue that there is no need for a declaration regarding the arbitration award because the plaintiffs' amended complaint does not assert a claim seeking to bind the defendants to the arbitration award. They also contend that to the extent the defendants want to exclude evidentiary matters, Duggan and Spherical Industries are bound by Duggan's admissions when he testified at the arbitration proceeding. The plaintiffs also assert that, based on certain court filings, the defendants are agents of Wolff and Wolff's company Spherical IP, and thus bound by the injunctive provisions contained in the Wisconsin judgment confirming the arbitration award. The defendants do not specifically respond to these arguments, but they contend that because they were not parties to the arbitration proceeding any evidence or findings from that proceeding are not admissible in this case.

I deny this part of the plaintiffs' motion. The fact that the amended complaint does not contain a claim seeking to bind the defendants to the arbitration award does not preclude the defendants from seeking a declaration on that topic. Further, the plaintiffs have previously sought to bind the defendants to the award in this case. *See* ECF No. 113. And the plaintiffs state in their motion that they believe the defendants are bound by the injunctive provisions of the Wisconsin judgment confirming the arbitration award. Thus, the plaintiffs have not met their initial burden in showing there is no need for a declaration of rights relating to the arbitration proceedings' impact on the defendants. Consequently, I deny this part of their motion.

### 2. Ownership

The plaintiffs argue there is no dispute that the defendants do not own the disputed technology, as Duggan testified Spherical Industries has no intellectual property. They contend that the Wisconsin arbitration proceeding determined that Formtec owns the technology under

the 2012 FOT Agreement, and the defendants are not parties to the FOT agreement and so have

no rights to the technology.  The plaintiffs note that during the arbitration, neither Wolff nor

Duggan testified that Duggan originated the idea of using the sphere-into-cylinder technology in

showerheads and spray nozzles, as Duggan and Wolff now contend.  And the plaintiffs assert

that Wolff testified at the arbitration proceeding that he had sold the technology related to spray

nozzles and showerheads to Formtec under the FOT Agreement.  They thus argue that the notion

that Duggan came up with the idea to use the technology in spray nozzles is newly invented for

this litigation, and the defendants' affidavits denying wrongdoing are sham affidavits that cannot

defeat summary judgment.  The plaintiffs contend that the defendants' desire to either purchase

Wolff's minority interest in the FOT Agreement or to license the technology from Formtec

shows that the defendants do not own the technology.

        The defendants respond that issues of fact remain regarding who owns the idea of using

sphere-into-cylinder Venturi technology in water applications such as showerheads and spray

nozzles.  The defendants contend that the issue of who owns the technology is being litigated in

Oregon between Wolff and Tomahawk, and that case is set for trial in June 2025.[7]  The

defendants argue that the plaintiffs are forum shopping and seeking a different ruling here than in

Oregon.[8]  They also argue that Wolff owns the technology under a Canadian patent and that the

---

[7] The defendants again incorrectly describe Tomahawk's arguments in the Oregon case regarding confidential information.  I addressed that issue in another order.

[8] The defendants also stated that they "intend to move to intervene in Oregon . . . ." ECF No. 436 at 13.  They have not done so.  Trial in that case is set for June 16, 2025. *Wolff v. Tomahawk Mfg.*, No. 3:21-cv-00880-SI, ECF No. 353 (D. Or.).  In their response brief, the defendants request that I deny the plaintiffs' motion for summary judgment and grant the defendants' abstention motion "so that the parties may all litigate in Oregon, a suit that, like this one, discovery is closed, but unlike this one, all the necessary parties – including the Inventor of the technology, James Wolff – are already litigating there." ECF No. 436 at 25.  The defendants do not explain how "all the necessary parties" would litigate in Oregon when Formtec and the defendants in this case are not parties to the Oregon case.

1  plaintiffs have not asserted claims or counterclaims against Wolff in any action regarding

2  ownership. And they contend that even if Formtec had rights to the technology under the 2012

3  FOT Agreement, it lost those rights because it did not pay Wolff his 30% share of royalties under

4  that agreement.

5      In this action, the plaintiffs claim rights to the technology under the FOT Agreement.

6  ECF No. 310 at 6-8, 16, 19. However, Wolff testified that the FOT Agreement is limited to meat

7  forming, and thus does not cover water applications. ECF No. 411-16 at 29. As discussed in

8  other orders, the issue of who owns the technology is currently being litigated in Oregon between

9  Tomahawk and Wolff, with trial set for June 2025.[9] *Wolff v. Tomahawk Mfg.*, No. 3:21-cv-

10  00880-SI, ECF No. 353 (D. Or.). I therefore deny the plaintiffs' motion for summary judgment

11  on this requested declaration.

12      ### 3. In the Public Domain, Known, or Knowable

13      The plaintiffs argue there is no genuine dispute that the trade secrets are not in the public

14  domain, known, or knowable. The plaintiffs note that Duggan testified at the arbitration

15  proceeding that he could not figure out how the technology worked from looking at the patents,

16  which shows that the trade secrets are not in the public domain. The plaintiffs also note that

17  Wolff averred that no patents were submitted related to water applications and Gannon testified

18  that he did not consult patents when working on a spray nozzle for Spherical Industries. The

19

20

---

21  [9] Neither Wolff nor Tomahawk were parties to the FOT Agreement. Rather, the FOT Agreement
   is between Formtec and Wolff's company, Spherical IP. The issue arises in the Oregon case via

22  Wolff's argument that this information is not covered by the FOT Agreement, and through
   Tomahawk's counterclaim that Wolff breached his duty of loyalty as a Tomahawk employee by

23  revealing confidential information about Tomahawk's work for Formtec on the spray nozzle
   project to Duggan and Spherical Industries. *Wolff v. Tomahawk Mfg.*, No. 3:21-cv-00880-SI,
   ECF No. 348 at 12-16, 26-28 (D. Or.).

plaintiffs also argue there is no genuine dispute that the defendants did not reverse engineer

because there is no evidence of how the defendants reverse engineered the disputed technology.

The defendants respond that a Canadian patent shows that Wolff owns the relevant

technology, and that this patent publicly revealed the alleged trade secrets. They also argue that

Tournour admitted that this information has been in the public domain since 2012 and can be

reverse engineered.

### a. Public Disclosure

As I addressed in another order, the fact that Canadian patent application number

3172877 became publicly available is irrelevant to the plaintiffs' claims in this case because any

alleged disclosure in that patent application occurred after the defendants' alleged

misappropriation at issue in this case. Additionally, I addressed in another order Tournour's

testimony regarding the trade secrets being in the public domain. Moreover, no reasonable jury

could find that Tournour admitted that the plaintiffs' internal testing, research, and design were

in the public domain. The defendants have not identified any other evidence to show when or

where any of that material has been publicly disclosed. I therefore grant the plaintiffs' motion

for summary judgment on the defendants' request for a declaration that the plaintiffs' trade

secrets related to the disputed technology were in the public domain before the defendants

allegedly misappropriated those trade secrets.

### b. Known or Knowable

A genuine dispute remains regarding whether the general idea of using the patent-

pending technology in non-meat applications was known or knowable because Duggan and

Wolff testified that Duggan came up with that idea. *See* ECF Nos. 411-14 at 12, 15, 26; 411-16

at 21. The plaintiffs argue that testimony is not worthy of belief because neither Duggan nor

Wolff testified to that during the earlier arbitration proceedings, and Wolff testified that he sold water applications of his technology to Formtec under the FOT Agreement between Formtec and Spherical IP. But credibility is an issue for the jury to decide. I therefore deny this portion of the plaintiffs' motion.

However, no genuine dispute remains that the plaintiffs' internal testing, research, and design materials are not known or knowable. The defendants have not pointed to any evidence that those materials are known. As I addressed in another order, Tournour's testimony that perhaps with enough time and resources, others could recreate the plaintiffs' trade secrets does not make that information knowable or capable of being reverse engineered. Thus, I grant the plaintiffs' motion with respect to the plaintiffs' internal research methods, results, designs, and prototypes. No genuine dispute remains that those materials are not known or knowable.

### c. Reverse Engineering

I deny the plaintiffs' motion with respect to reverse engineering because the defendants have testified that they used information in the publicly available patent application to determine ratios for testing and design. *See* ECF No. 411-13 at 26; 411-14 at 11-12. Although the plaintiffs contend this testimony is not credible, particularly given Duggan's testimony at the arbitration proceeding that he could not figure out how to make the technology work from just reading the patent materials, credibility is for the jury to decide. I therefore deny this portion of the plaintiffs' motion.

### 4. Compulsory Counterclaims

The plaintiffs argue there is no genuine dispute that their claims in this case are not forfeited compulsory counterclaims from the Oregon case because the Oregon case involves different parties, claims, and contracts. The defendants do not specifically address this

1    argument, although they note that the plaintiffs did not file counterclaims in any action against

2    Wolff regarding whether Wolff owns the Canadian patent.

3         I grant the plaintiffs' motion because the defendants have not pointed to any evidence

4    that the claims in this case are compulsory counterclaims in the Oregon case.  As I noted in a

5    separate order, the defendants have not pointed to any evidence that they were subject to

6    jurisdiction in Oregon at the time Tomahawk filed its answer in that case. *See* Fed. R. Civ. P.

7    13(a)(1).  Thus, they have not presented any evidence that Tomahawk was required to file a

8    compulsory counterclaim against them in Oregon.  Whether Tomahawk should have filed a

9    counterclaim against Wolff in Oregon is not before me, so I do not address it.

10   **B.  Abuse of Process (Count Two)**

11        The defendants' second counterclaim alleges that the plaintiffs have brought lawsuits in

12   multiple jurisdictions and sought to seal court filings for the ulterior purpose of making it appear

13   that the plaintiffs owned the disputed technology when they do not. ECF No. 315 at 15-17.  The

14   plaintiffs contend that this abuse of process claim fails as a matter of law because it is based on

15   the plaintiffs filing this lawsuit.  Additionally, they assert that the defendants have not shown that

16   the plaintiffs acted with an improper purpose or engaged in acts not proper to the regular conduct

17   of the proceedings.  The plaintiffs argue that seeking to seal documents in a court case where

18   those documents reveal their trade secret is not improper and, in any event, cannot harm the

19   defendants who have access to the sealed filings.  Finally, the plaintiffs argue the defendants

20   have no standing to assert an abuse of process claim on behalf of other parties in other cases.

21        The defendants respond that the plaintiffs are litigating issues involving the technology in

22   multiple venues and misusing protective orders to hinder their opponents in the various cases.

23   They also assert that the plaintiffs are intimidating witnesses and counsel by identifying them by

1  name in pleadings but not naming them as defendants in the various cases, so that the identified

2  individuals "cannot meet Plaintiffs' false allegations of criminal conduct without moving to

3  intervene in far off locations to litigate." ECF No. 436 at 24.

4      Under Nevada law, the "elements of an abuse of process claim are: (1) an ulterior

5  purpose . . . other than resolving a legal dispute, and (2) a willful act in the use of the legal

6  process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 38 P.3d 877,

7  879 (Nev. 2002) (quotation omitted).  "[F]iling a complaint does not constitute abuse of

8  process." *Land Baron Inv. v. Bonnie Springs Fam. LP*, 356 P.3d 511, 520 (Nev. 2015).

9      I grant the plaintiffs' motion as to the allegation that the plaintiffs filed the complaint in

10  this case with an improper purpose because filing a complaint cannot support an abuse of process

11  claim under Nevada law.  I also grant the motion as to the allegation that the plaintiffs have

12  sought to seal matters in this court for the improper purpose of hampering litigants in other cases.

13  The defendants are not the litigants in most of the other cases, and the defendants have access to

14  the sealed filings to litigate this case.  While the defendants are litigants in a case in California

15  against their former attorneys, and the defendants have attempted to lift sealing orders in this

16  case to allow for use of those materials in California, they have failed in that effort thus far due

17  to their own inadequate filings. *See, e.g.*, ECF Nos. 475; 489.  Additionally, the defendants have

18  not pointed to evidence they have been damaged by any sealing in this case.

19      I also grant the plaintiffs' motion to the extent the defendants are asserting other parties'

20  rights when the defendants argue that the plaintiffs have alleged that Wolff, Elisabeth Wolff, and

21  Gannon engaged in misconduct without naming those individuals as parties to the case.[10]  The

22

23  [10] The defendants also argue that in cases in other districts, the plaintiffs have identified the
defendants' attorney in this case as a criminal co-conspirator.  The defendants do not identify the
filings they are referring to, and I will not scour other courts' dockets for the defendants.

abuse of process counterclaim does not identify this conduct as a basis for the claim.  Moreover, the defendants are named in this case and have been defending it.  The defendants have no standing to assert harms to non-parties and, even if they did, they have identified no damages the defendants suffered as a result.  The defendants contend that the plaintiffs have alleged that third parties engaged in misconduct as an intimidation tactic to dissuade these individuals from assisting the defendants in this case.  But they do not point to evidence that anyone was dissuaded.  I therefore grant the plaintiffs' motion for summary judgment on the defendants' abuse of process claim.

### C.  Intentional Interference with Prospective Economic Advantage (Count Three)

In count three of the counterclaims, the defendants allege that the plaintiffs brought this and other lawsuits in bad faith to bar the defendants from using the technology in which they had legitimate business expectancies. ECF No. 315 at 18-19.  The plaintiffs argue this claim fails as a matter of law because the defendants have admitted they had no business expectancy, as they have never produced a product, had no revenue, had no orders or pre-orders, and never solicited a customer.  The defendants respond that the plaintiffs have bankrupted their startup company through attorney's fees and litigation costs.

To establish a claim for intentional interference with prospective economic advantage under Nevada law, the defendants must show: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of

---

Additionally, the defendants do not explain how the alleged abuse of process in those cases falls within their abuse of process claim in this case.  The counterclaim in this case does not mention anything about accusations against the defendants' attorney in court filings.

1  privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the

2  defendant's conduct." *Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993).

3       Hardy testified that Spherical Industries has never had revenue or solicited a customer,

4  and that a reference to millions of pre-orders in a pitch deck was "aspirational." ECF No. 411-13

5  at 14, 30-31. The defendants have not pointed to any evidence of a prospective contractual

6  relationship between the defendants and a third party with which the plaintiffs interfered. They

7  cite no authority for the proposition that attorney's fees and costs in defending litigation counts

8  as interference with a prospective economic advantage under similar circumstances. Indeed,

9  they cite no legal authority at all in their opposition regarding this claim. *See* ECF No. 436 at 24-

10  25. I therefore grant the plaintiffs' motion on this claim.[11]

11  **E.  Affirmative Defenses**

12       The plaintiffs argue the defendants' affirmative defenses of independent invention,

13  reverse engineering, and unclean hands are unsupported and "reconstituted from their

14  Counterclaims." ECF No. 411 at 45. The plaintiffs thus assert that these defenses should be

15  dismissed. The defendants respond that they verified their answer, so that raises genuine

16  disputes about whether the defendants developed their technology independently and reverse

17  engineered it, and whether the plaintiffs have unclean hands. They also argue the plaintiffs have

18  "offered no evidence or argument to show this Court why Rule 56 would apply to these

19  affirmative defenses." ECF No. 436 at 23 (emphasis omitted).

20       The defendants' answer asserts as affirmative defenses that the defendants developed

21  their technology independent from the plaintiffs' technology and that they reverse engineered it

22

23  [11] The plaintiffs also argue the defendants have no evidence of damages, but because I grant their motion for summary judgment on the two counterclaims that seek damages, I need not address this issue.

1    from information that was known, knowable, or in the public domain. ECF No. 315.  Neither

2    party addresses whether these are in fact affirmative defenses or simply refutation of elements of

3    the plaintiffs' claims.  Regardless, as discussed above, genuine disputes remain regarding

4    whether the defendants came up with their ideas, research, and potential prototype on their own

5    without misappropriating the plaintiffs' trade secrets, confidential information, or other property.

6    I therefore deny the plaintiffs' motion for summary judgment on these two "affirmative

7    defenses."

8           The defendants' answer also asserts as an affirmative defense that the plaintiffs have

9    unclean hands because (1) the plaintiffs are claiming trade secrets they do not own, (2) the

10   alleged trade secrets are in the public domain, (3) the plaintiffs committed a fraud on the court by

11   obtaining injunctive relief in this litigation by conflating defendant Spherical Industries, Inc. with

12   non-party Spherical Industries, LLC by misrepresenting the effect of the Wisconsin arbitration

13   award, and (4) the plaintiffs pursued this lawsuit as part of a vexatious campaign to bankrupt the

14   defendants by litigating the same factual and legal issues in multiple forums and obtaining

15   sealing orders to create the fiction that the plaintiffs have a trade secret.

16          The defendants' only argument with respect to unclean hands is that the plaintiffs have

17   not offered evidence or argument as to why Rule 56 applies to their affirmative defenses.  The

18   simple answer is that the defendants bear the burden of proving any affirmative defense. *See*

19   *Nev. Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct.*, 338 P.3d 1250, 1254 (Nev. 2014) (en banc)

20   (stating that a defendant bears the burden of proving an affirmative defense); *Metal Jeans, Inc. v.*

21   *Metal Sport, Inc.*, 987 F.3d 1242, 1245 (9th Cir. 2021) (applying the summary judgment standard

22   to an unclean hands affirmative defense).  The plaintiffs met their initial burden on summary

23   judgment by pointing to a lack of evidence to support the defendants' affirmative defense. *See*

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  The burden thus shifted to the defendants to point to evidence raising a dispute for trial. *Id.*  The defendants have not even attempted to do so, including not setting forth applicable law on unclean hands, nor analyzing how they have raised a genuine dispute under the facts and law. *See V2 Holdings, LLC v. Winters*, 535 P.3d 1146 (Nev. 2023) ("[B]ecause V2H failed to adequately invoke and support this affirmative defense at the summary judgment phase, the district court did not err in implicitly rejecting the conclusory unclean hands affirmative defense.").  I therefore grant the plaintiffs' motion for summary judgment on this affirmative defense.

## V.  CONCLUSION

I THEREFORE ORDER that the plaintiffs' motions for summary judgment **(ECF Nos. 410, 411, 415, 417) are GRANTED in part** as set forth in this order.

DATED THIS 15th day of May, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE